THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GMAC, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>HIATT PONTIAC GMC TRUCKS, INC., a Delaware corporation, STEPHEN A. HIATT, individually, and the marital community composed of STEPHEN A. HIATT and JANE DOE HIATT; STEVEN M. HIATT and JANE DOE HIATT, husband and wife, and THEA HIATT, individually and the marital community composed of THEA HIATT and JOHN DOE HIATT,<br><br>                    Defendants. | NO. C08-5707 RJB<br><br>HIATT INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Noted for:  November 13, 2009<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND................................................................................1

       A.    Formation of Hiatt Pontiac and Corporate Governance..................................1

       B.    GMAC's Release of Hiatt's Personal Guarantees and the 2007-08 Economic Crisis................................................................................4

       C.    GMAC's August 2008 Audit. ........................................................7

IND. DEFS' MOT FOR SJ - i
(C08-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

D.    GMAC Obtains a TRO Effectively Forcing Hiatt Pontiac to Close Its
      Doors. ........................................................................................................9

II.    LEGAL ARGUMENT ................................................................................... 12

A.    This Court Should Respect the Corporate Form Because GMAC Has
      No Evidence of Exceptional Circumstances that Would Justify
      Piercing the Corporate Veil. ................................................................. 12

      1.    There is No Evidence that Hiatt Pontiac Failed to Respect the
            Corporate Form ............................................................................. 15

      2.    There is No Evidence that GMAC was Deceived by Hiatt
            Pontiac Borrowing Money from Hiatt. ........................................ 17

      3.    There is No Evidence that Paying Hiatt Pontiac's Creditors
            and Legitimate Business Expenses Was Fraudulent. ................. 18

      4.    Plaintiff Cannot Show that Hiatt Pontiac is the Alter Ego of
            Stephen A. Hiatt ............................................................................ 20

      5.    Plaintiff is Not Entitled to a Solvent Defendant and Cannot
            Create One by Asserting the Doctrine of Piercing the
            Corporate Veil. .............................................................................. 21

B.    Stephen A. Hiatt Had A Fiduciary Duty to Hiatt Pontiac, Not GMAC,
      and There Is No Evidence to Support the Alleged Breach of Fiduciary
      Duty. .................................................................................................... 22

C.    Stephen A. Hiatt's Actions With Respect to Hiatt Pontiac's Contracts
      with GMAC Were All In His Capacity as President of Hiatt Pontiac
      and Were Privileged ............................................................................. 23

D.    The Evidence Does Not Support Any Fraudulent Transfers to the
      Hiatt Individuals. ................................................................................. 24

E.    Stephen A. Hiatt Alone Made Decisions as to Payment and There is
      No Evidence of Any Conspiracy Among the Defendants. ..................... 24

III.    CONCLUSION ............................................................................................ 25

IND. DEFS' MOT FOR SJ - ii
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

Defendants Stephen A. Hiatt, Carol M. Hiatt, Steven M. Hiatt, and Thea Hiatt (the "Hiatt Individuals") and Hiatt Pontiac GMC Trucks, Inc. ("Hiatt Pontiac"), ask the Court to grant summary judgment and dismiss GMAC's multiple causes of action against the Hiatt Individuals where GMAC seeks: (1) to pierce the corporate veil and hold Stephen A. Hiatt personally liable for all obligations of Hiatt Pontiac to GMAC; (2) to suggest Stephen A. Hiatt breached his fiduciary duty to Hiatt Pontiac; (3) to hold Steven M. Hiatt and Stephen A. Hiatt individually liable for payments they received on August 28, 2008; and (4) any attempt to recover based upon some alleged "conspiracy" among the Hiatt Individuals. These claims against the Hiatt Individuals should be dismissed with prejudice.

## I.    FACTUAL BACKGROUND

### A.    Formation of Hiatt Pontiac and Corporate Governance

Hiatt Pontiac was incorporated on March 22, 1985, and GM, through its Motors Holding Division ("MHD"), was one of the initial shareholders.[1] From 1985 until 1989, GMAC's affiliate, GM (through MHD), fully participated in the corporate formation of Hiatt Pontiac, was a stockholder of Hiatt Pontiac, and had access to its corporate records.[2] Since its inception in 1985, Hiatt Pontiac has continually operated as a legally separate entity in the conduct of its business and in contracting with others, including GMAC, who has been doing business with Hiatt Pontiac in April 1985.[3]

Hiatt Pontiac maintained corporate formalities in its operations and did not commingle funds with individuals or other entities:

---

[1] Bloomfield Dec. in Support of Summary Judgment, Ex. 1 [HI 00840–55] ("SLB Dec."); MHD initially owned 75% of the shares, and Stephen A. Hiatt the remaining 25%. Stephen A. Hiatt Dec. at ¶ 3.

[2] SLB Dec. Ex. 2 [By-Laws HI 00866–87].

[3] SLB Dec. Ex. 3 [Contracts HI00651–61, 00664–682, 00731–50, 00752–754, 00760, 00765–779, 00888–914, 00943-947, 03994–04067]. GMAC 08788-08873 (these are all Hiatt/GMAC)

Ind. Defs' Mot for SJ - 1
(C08-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

- Hiatt Pontiac incorporated as a separate entity in Delaware;[4]
- Hiatt Pontiac created by-laws at formation;[5]
- Hiatt Pontiac issued stock to its shareholders;[6]
- Hiatt Pontiac has had corporate directors and/or officers;[7]
- Hiatt Pontiac held shareholder meetings;[8]
- Hiatt Pontiac made decisions by passing Resolutions;[9]
- Hiatt Pontiac submitted state and federal filings;[10]
- Hiatt Pontiac filed corporate income tax returns;[11]
- Hiatt Pontiac had separate bank accounts from the Hiatt Individuals;[12]
- Hiatt Pontiac kept its own financial and personnel records;[13] and
- Hiatt Pontiac entered into agreements and contracts in its corporate status, including contracts with GMAC, through its duly authorized officers.[14]

MHD had uniform business practices, policies and procedures that Hiatt Pontiac agreed to follow.  MHD also prepared the corporation by laws, meeting minutes and more.  Hiatt Pontiac continued to generally follow these established procedures even after Stephen A. Hiatt bought out MHD in 1989.[15]  Banking, vendor and flooring relationships were also established in accord with MHD guidelines and with GM's approval.  For example, GM required that Hiatt Pontiac use a specified format established by GM for financial records.  This format included an account coded "220" for employee

---

[4] SLB Dec. Ex. 1. (Incorporation documents HI00849-850

[5] SLB Dec. Ex. 2. (Bylaws HI0866-887)

[6] SLB Dec. Ex. 3 (Stock shares HI00971–01047).

[7] SLB Dec. Ex. 4 (Minutes HI00662–663, 00856–865, 00916–917, 00920–924).

[8] *Id.*

[9] SLB Dec. Ex. 5 (Resolutions 00751, 00756–59, 00761–64, 00925–26, 04115–4124).

[10] SLB Dec. Ex. 6 (State and Federal filings HI 00719–22, 00781–782, 00852–855, 00949–960).

[11] Hiatt Dec. ¶ 3.

[12] Hiatt Dec. ¶ 5.

[13] Hiatt Dec. ¶¶ 3-5.

[14] See Dkt. 1 Ex. A at 26-38 (Exs. A-F to First Amended Complaint); Hiatt Dec. ¶¶ 3-5.

[15] Hiatt Dec. at ¶ 3.

Ind. Defs' Mot for SJ - 2
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

receivables.  An employee's "220 account" was debited for any personal expenses or payments advanced on behalf of an individual employee by Hiatt Pontiac.  The balance would either be deducted from the employee's paycheck or repaid by the employee.[16]

Hiatt Pontiac has always maintained separate bank accounts and has never shared bank accounts with the Individual Defendants.  Over the years Stephen A. Hiatt obtained business credit cards for the use of the corporation, including an American Express Business Gold Card.  Stephen A. Hiatt personally guaranteed this card and his name is also on the account.[17]  Through the years occasional personal expense items were charged by Hiatt and other employees.  Any such personal charges were then charged to the individual employee's 220 account and repaid by the employee.[18]

Stephen A. Hiatt got his start in the car business in the 1970's at Walker Chevrolet, where he first began his working relationship with GMAC and GM.[19]  From the creation of Hiatt Pontiac in 1985, GMAC was its sole source for "flooring" of vehicles.  Hiatt Pontiac grew from just 23 employees to around 75 employees and encompassed five separate franchises by 2007.[20]  Hiatt Pontiac represented multiple product lines under five different dealer agreements and related amendments: (1) Pontiac; (2) GMC Trucks (light duty personal use, commercial light and medium duty, Isuzu diesel trucks, and Caterpillar diesel engine service); (3) Nissan Diesel; (4) Hino (Toyota Diesel); and (5) Suzuki (cars and trucks).[21]  Stephen A. Hiatt served as a representative in various GM

---

[16] Hiatt Dec. at ¶¶ 4-5.
[17] Hiatt Dec. at ¶ 5.
[18] Hiatt Dec. at ¶ 5.
[19] Hiatt Dec. at ¶¶ 1-3.
[20] Hiatt Dec. at ¶¶ 1-3.
[21] Hiatt Dec. at ¶ 2.

Ind. Defs' Mot for SJ - 3
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

dealer organizations, including Pontiac's National Dealer Advisory Council.[22]  Throughout the years Hiatt Pontiac earned many GM awards, achieved platinum status, and placed number one in Washington State sales to retail customers many times.[23]

B.    **GMAC's Release of Hiatt's Personal Guarantees and the 2007-08 Economic Crisis.**

As a new dealer GMAC asked Stephen A. Hiatt sign a personal guarantee for the flooring line.  Hiatt Pontiac was successful and Stephen A. Hiatt was able to buy out GM in full by 1989 – six years ahead of schedule.  At this point, GMAC released his personal guarantee for the flooring line.[24]  Consistent with the ups and downs in the economy, during the recession years of the 1990's Hiatt Pontiac needed additional working capital to floor its used vehicles.  GMAC requested a personal guarantee and a comprehensive security agreement, which Stephen A. Hiatt granted.[25]  In 1998, Stephen A. Hiatt personally invested an additional $500,000 in Hiatt Pontiac to recapitalize the business.  Profitability was strong, and the profits were retained by the company.  At that point GMAC again released Stephen A. Hiatt's personal guarantee and released the additional collateral.  After this point, the original Wholesale Security Agreement from 1985 (as amended) was the sole basis for GMAC's security interest in vehicles it floored for Hiatt Pontiac.[26]

In 2007, in an effort to further diversify and enhance its prospects, Hiatt Pontiac invested in a Suzuki franchise hoping to meet the need for fuel efficient vehicles.  GMAC

---

[22] *Id.*

[23] *Id.*

[24] Hiatt Dec. at ¶ 6; SLB Dec. Ex. 7 [HI00353].

[25] Hiatt Dec. at ¶ 6.

[26] Dkt. 1 Ex. A at 26-38 (Exs. A-F to Amended Complaint; WSA and Amendments).

Ind. Defs' Mot for SJ - 4
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

knew of this and provided Hiatt Pontiac with $1.5 million in flooring for Suzuki vehicles.[27] After some relatively flat years for profitability, by early 2007, Hiatt Pontiac was experiencing some serious monthly losses. This was not unique to Hiatt Pontiac – GM and GMAC were also posting record losses during this period.[28] In an effort to strengthen performance, Stephen A. Hiatt retained his son (owner of Mitsubishi and Suzuki dealerships) as a consultant to help improve sales and profitability.[29] Steven M. Hiatt's efforts did improve Hiatt Pontiac profitability and sales and GMAC representatives visited Hiatt Pontiac and congratulated both Hiatts on the improvement.[30]

At this point, Stephen A. Hiatt began considering the need for recapitalization, evaluating his potential retirement and considering how he might sell the business, hopefully to Steven M. Hiatt. GMAC expressed interest in a loan to Hiatt Pontiac for working capital, but at age 59 Stephen A. Hiatt was not willing to personally guarantee a loan or provide all of his personal assets as security for a loan, and he told GMAC this.[31] The looming economic crisis and high gas prices took a toll on the auto industry in 2008, causing sales of trucks and SUV's to plummet. Unfortunately, Steven M. Hiatt had been forced to close his dealerships and was not in a position to purchase Hiatt Pontiac.[32] By June 2008, vehicle sales had sunk to new lows and auto dealers were struggling.

In May 2008 Stephen A. Hiatt began pursuing another strategy because GM approached him with an interest in acquiring Hiatt Pontiac. Hiatt considered, as an

---

[27] Hiatt Dec. at ¶ 8.
[28] *Id.*
[29] Hiatt Dec. at ¶ 9.
[30] *Id.*
[31] Hiatt Dec. at ¶¶ 9-11.
[32] Hiatt Dec. at ¶ 10.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

alternative to selling his dealerships to another individual or entity, the additional option of GM buying out Hiatt Pontiac's GM franchises.[33]  GM had long had a goal to "channel" its Pontiac, Buick and GMC lines into one dealer showroom in the Tacoma area, thus reducing the number of dealers in the Tacoma market.  Both Gilchrist Buick and Hiatt Pontiac had resisted GM's effort to convince one of them to sell out.  GM "channeled" or combined its Pontiac Buick and GMC lines in most other major markets nationally, and Tacoma was the only major metropolitan holdout in Washington and Oregon.[34] Negotiations began with GM in June 2008, and GM's offer was $1 million offer would be available and approval from GM was due on August 22, 2008.[35]

Recognizing the economic issues facing the industry, Hiatt Pontiac attempted to cut expenses.  Hiatt Pontiac had survived tough times before, including the Gulf War and the following recession, the burst of the tech bubble, and 9/11.  Hiatt Pontiac had always adjusted and managed to weather the storm.  In 2008 the most significant expense was carrying cost on Hiatt Pontiac's GMAC flooring line.[36]

At this point, Stephen A. Hiatt began to consider feasible options to enable Hiatt Pontiac to continue in business.  He considered selling the Suzuki franchise, evaluated contingency plans, and consider what might happen if Hiatt Pontiac sold all the franchises and liquidated.[37]  In doing this he had to consider ongoing expenses, wind down personnel needs, how to protect Hiatt Pontiac customers and ensure that the

---

[33] Hiatt Dec. at ¶¶ 11-12.

[34] Hiatt Dec. at ¶¶ 11, 13.

[35] Hiatt Dec. at ¶ 13.

[36] Hiatt Dec. at ¶¶ 16-17.Hiatt Pontiac paid GMAC over $2 million in floor plan interest charges in the 30 months leading up to August 2008.

[37] Hiatt Dec. at ¶ 18.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

company complied with applicable laws. By early August Stephen A. Hiatt decided he needed to approach GMAC with a proposal to allow both GMAC and Hiatt Pontiac to come up with a "win-win" solution to move forward.[38]

## C.    GMAC's August 2008 Audit.

For decades GMAC consistently received monthly and year-end financial reports from Hiatt Pontiac.[39]    GMAC was fully aware of Hiatt Pontiac's financial status, and performed audits routinely to evaluate its collateral position.[40]    About one week into August 2008, Jerry Vick of GMAC visited Hiatt Pontiac and met with Stephen A. Hiatt and Steven M. Hiatt. As he left the meeting Vick said that Hiatt Pontiac should work on one goal: reducing its used car flooring, and he also mentioned that Hiatt Pontiac's used vehicle flooring line could be frozen.[41]    Hiatt understood that this meant Hiatt Pontiac's used car flooring would be held at its current level.  Instead, GMAC intended to cut off all future used car flooring, which Hiatt Pontiac learned this several days later when GMAC began rejecting its requests to finance used vehicles.[42] This added immediate additional stress to cash flow and severely hampered the ability of the business to continue.  At this point, Stephen A. Hiatt instructed sales managers to get hard bids on all trade-ins and to start shopping Hiatt Pontiac's used units that were not floored by GMAC.[43]

On August 14, 2008, GMAC arrived to perform an audit.  Hiatt Pontiac's Controller, Melissa Branham had been out for two weeks on medical leave and would not be in the

---

[38] Hiatt Dec. at ¶¶ 18-19.
[39] Hiatt Dec. at ¶ 20.
[40] Hiatt Dec. at ¶ 20.
[41] Hiatt Dec. at ¶ 19.
[42] Hiatt Dec. at ¶ 19.
[43] Hiatt Dec. at ¶ 19.

Ind. Defs' Mot for SJ - 7
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

office so Stephen A. Hiatt instructed staff to notify GMAC that he would be personally involved in the audit, including the title audit.[44]  When Hiatt arrived at the dealership he met with GMAC Audit personnel Jon Lafarge and Wayne Fink to go through the titles and evaluate which were vehicles that were collateral for GMAC.  As Hiatt handed each title to the GMAC representatives the titles were separated into two stacks: (1) vehicles floored by GMAC and (2) non-floored vehicles.  As we went through this process, Lafarge would say, "This one is GMAC's." or "This one is yours."  At the same time he checked off on his sheet titles of vehicles floored by GMAC. [45]

Don Rice of GMAC contacted Hiatt that day to voice his concern that GMAC would need to wait for Hiatt to arrive to do the title audit.  Hiatt told Rice he had hoped to have the opportunity to meet with GMAC before the next audit, and told Rice that Hiatt Pontiac would have more sold and unpaid units than in past audits.[46]  Later that same day Rice demanded that Hiatt sign personal guarantees, additional security agreement and assignments of accounts or GMAC would repossess Hiatt Pontiac's inventory immediately.[47]

That evening Hiatt tripped and severally sprained his ankle, causing him to miss a 9:00 a.m. with GMAC the next morning due to medical treatment.  To avoid delay Hiatt designated Steven M. Hiatt to work with GMAC on the physical part of the audit.[48]  Rice, via phone, became even more threatening to Stephen A. Hiatt, causing Hiatt's heart

---

[44] Hiatt Dec. at ¶ 20.
[45] Hiatt Dec. at ¶ 20.
[46] Hiatt Dec. at ¶ 21.
[47] Hiatt Dec. at ¶ 21.
[48] Hiatt Dec. at ¶¶ 21-22.

Ind. Defs' Mot for SJ - 8
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

condition to flare up.  Hiatt advised Rice that his cardiologist was of the opinion that the stress engendered by Rice's threats and unprofessional conduct was dangerous to his health.[49]  Rice continued to demand and threaten in an unprofessional manner that Hiatt sign a personal guarantee and cross-collateralization agreement, or GMAC would take Hiatt Pontiac's vehicles.

In one of his conversations with Rice Stephen A. Hiatt asked for more time to put together a plan and to get counsel before agreeing to GMAC's proposal.  Steven M. Hiatt, (who was also present for this phone conference) asked Rice, "If [Stephen A. Hiatt] were to put in $2-3 million of additional working capital would GMAC forego the personal guarantee?"  Rice said, "No!"  GMAC wanted Hiatt Pontiac out of business, allowing its partner GM to realize its goal of a channeled Pontiac Buick GMC in Tacoma at no cost.

In light of the stress and its adverse impact on Stephen A. Hiatt's health, he limited his direct contact with GMAC and asked Steven M. Hiatt to be GMAC's contact person at the dealership, while Stephen A. Hiatt continued to work on Hiatt Pontiac matters off-site.[50]  However, Steven M. Hiatt did not have the authority to make decisions about the dealership on his own and acted pursuant to the direction of Stephen A. Hiatt.[51]

D.    **GMAC Obtains a TRO Effectively Forcing Hiatt Pontiac to Close Its Doors.**

On August 22, 2008, the date Hiatt Pontiac expected final approval, GM reduced its $1 million offer to zero.[52]  Soon after Steven M. Hiatt asked if GM could exercise its

---

[49] Hiatt Dec. at ¶¶ 22-23.
[50] Hiatt Dec. at ¶ 23.
[51] Hiatt Dec. at ¶¶ 23, 36.
[52] Hiatt Dec. at ¶ 23, 36.

Ind. Defs' Mot for SJ - 9
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

right of first refusal if Hiatt Pontiac was sold to a Hiatt family member, GM responded with a $200,000 offer and a deadline of noon on August 28, 2008. Hiatt Pontiac was unable to agree on terms by that deadline. GMAC then filed a lawsuit and obtained a TRO sometime during the afternoon of August 28, 2008,[53] after the deadline set by GM passed. Defendants are unsure of the exact time GMAC obtained the TRO since a time of entry was not stated on the TRO and it was not served until a later date.[54]

GMAC's complaint focuses largely on payments made by Hiatt Pontiac on August 28, 2008.[55] Those expenditures were for legitimate business expenses and obligations and were not gifts of corporate funds or otherwise sham transactions.[56] The Hiatt Individuals named as defendants did not receive any gifts of funds from the corporation. The taxes paid on this date were not a personal obligation of Stephen A. Hiatt, but were an obligation of Hiatt Pontiac under its lease with Stephen A. Hiatt.[57] Defendants Carol M. Hiatt[58] and Thea Hiatt received nothing whatsoever. Thea Hiatt has never been employed by Hiatt Pontiac, and Carol M. Hiatt last worked for Hiatt Pontiac in the 1990's.[59] On August 28, 2008, Stephen A. Hiatt was paid three months salary through

---

[53] Hiatt Dec. at ¶ 14.

[54] *Id.*

[55] Dkt. 1, Ex. A at 20 (¶¶66-67).

[56] Hiatt Dec. at ¶ 34.

[57] Hiatt Dec. at ¶ 34 and Ex. 2 thereto.

[58] GMAC has made much of Carol M. Hiatt's charges on personal and company Amex cards – all of which were personally paid for by the Hiatts. Carol M. Hiatt was a signatory on two Hiatt Pontiac business AMEX cards, one for personal use and one for business use. Stephen and Carol Hiatt opened an American Express card for Hiatt Pontiac which required use of their personal names and credit. Eventually, two Amex accounts existed, one used by the Hiatts personally and paid by them directly (#52000) and the other used by Hiatt Pontiac (#56002) was used on occasion by Carol M. Hiatt, sometimes for business purchases, and other times for personal purchases. If the Hiatt Pontiac AMEX was used by either Hiatt for any personal purchase it was charged to Stephen A. Hiatt's "220" account and paid by Stephen A. Hiatt personally. Hiatt Pontiac did not pay for personal charges of the Hiatts. Hiatt Dec. at ¶ 5; SLB Dec. Ex 8 at No. 6 and No. 7.

[59] Hiatt Dec. at ¶ 36.

Ind. Defs' Mot for SJ - 10
(C08-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Hiatt Pontiac payroll (with appropriate withholdings) for his work to wind down the company on this same date.[60]  Controller Melissa Branham also was paid on this date to retain her services for bookkeeping and accounting services, which she then performed.[61]  Similarly, Defendant Steven M. Hiatt (an employee who was never an officer or shareholder of Hiatt Pontiac) received a retainer approximately equivalent to two months wages on August 28, 2008 to compensate him for services to be performed in winding up the business.[62]  Steven M. Hiatt performed those services for Hiatt Pontiac over the next several months assisting Hiatt Pontiac in liquidating company assets.  Both Branham and Steven M. Hiatt were issued 1099's in conjunction with these payments.

At all times in 2008 President and sole shareholder Stephen A. Hiatt acted with the best interests of the corporation at heart.[63]  Rather than preferring GMAC over other creditors and employees, Stephen A. Hiatt attempted to keep the business going in some form and was actively attempting to negotiate with GMAC and GM in this regard until GMAC seized vehicles and obtained a TRO that shut the business down.  Stephen A. Hiatt still attempted to serve customers who were in the process of buying vehicles or having their vehicles serviced, and to keep the business open in case there could be a sale to another entity, but the lack of vehicles and inability to continue to pay employees caused him to shut the doors in early September 2008.[64]

---

[60] Hiatt Dec. at ¶¶ 34, 36; SLB Dec. Ex 8 at No. 6 and No. 7
[61] *Id.*
[62] *Id.*
[63] Hiatt Dec. at ¶¶ 35, 37.
[64] Hiatt Dec. at ¶¶ 26-28.

Ind. Defs' Mot for SJ - 11
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

## II.    LEGAL ARGUMENT

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The material facts are not in dispute and GMAC's claims addressed in this motion fail as a matter of law.

**A.    This Court Should Respect the Corporate Form Because GMAC Has No Evidence of Exceptional Circumstances that Would Justify Piercing the Corporate Veil.**

Under Washington law, courts are overwhelmingly unwilling to disregard a corporate entity and impose personal liability upon shareholders, officers, or directors. *Culinary Workers v. Gateway Café*, 91 Wn.2d 353, 366, 588 P.2d 1334 (1979).  One of the primary purposes of the corporate form is to limit shareholder liability.  Thus, the doctrine of disregard of the corporate form or "piercing the corporate veil" may only be assessed against shareholders personally in <u>exceptional</u> circumstances. *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wash. 2d 403, 411, 645 P.2d 689 (1982).  GMAC suggests the corporate veil must be pierced because: (1) Hiatt used Hiatt Pontiac assets for his own personal use; (2) Hiatt diverted Hiatt Pontiac assets to himself and his family members without consideration; (3) Hiatt commingled corporate and personal assets; (4) Hiatt failed to maintain corporate formalities; (5) Hiatt Pontiac was a shell for Hiatt to conduct business; and (6) Hiatt exercised complete control over Hiatt Pontiac such that the individuality and separateness of the corporation ceased to exist.[65]  Because the evidence, or absence of evidence in this case, underlying these allegations does not

---

[65] Dkt. 1, Ex. A (First Amended Complaint ) at 7-8 (¶¶ 7, 8).

Ind. Defs' Mot for SJ - 12
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

provide any legitimate basis to pierce the corporate veil of Hiatt Pontiac and the material facts are not disputed, summary judgment should be granted in favor of the Hiatt Individuals.

A corporation's insolvency is not a valid basis for piercing the corporate veil. "Separate corporate entities should not be disregarded solely because one cannot meet its obligations.... The absence of an adequate remedy alone does not establish corporate misconduct." *Meisel,* 97 Wn.2d at 411, 645 P.2d 689.  In addition, harm, by itself, "does not create corporate misconduct.... The purpose of a corporation is to limit liability." *Meisel,* 97 Wn.2d at 410-411, 645 P.2d 689.

Under Washington law, there are two theories available to justify piercing the corporate veil.  The first considers whether the corporation has been intentionally used to violate or evade a duty owed to another.  *Morgan v. Burks,* 93 Wash. 2d 580, 585, 611 P.2d 751 (1980).  This requires a showing that disregard of the corporate entity is necessary to prevent an unjustified loss to the injured party.  *Meisel,* 97 Wash. 2d at 410. The other form is the "alter ego" theory.  It is applied when the corporate entity has been disregarded by the principals themselves such that there is a unity of ownership and interest and the separateness of the corporation has ceased to exist.  *Grayson v. Nordic Constr. Co., Inc.,* 92 Wn.2d 548, 553, 599 P.2d 1271 (1979).  Hiatt Pontiac was not used to perpetuate a fraud.  Its separate corporate status was maintained and respected and should be honored.

> In order to justify the judicial disregard of corporate identities, one, at least, of two things must clearly appear. Either the dominant corporation must control and use the other as a mere tool or instrument in carrying out its own plans and purposes so that justice requires that it be held

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

> liable for the results, or there must be such a confusion of identities and acts as to work a fraud upon third persons. In most, if not all, of the Washington decisions in which corporate entities have been disregarded, **both elements have appeared**, and there is strong authority for the rule that both elements (if there be two) must appear in order to warrant relief.

*Critzer v. Oban*, 52 Wn.2d 446, 450–51, 326 P.2d 53 (1958).

Because a primary purpose of using the corporate form is to limit shareholder liability, using the doctrine of corporate disregard to assesses liability for corporate obligations against shareholders personally, is rarely imposed and only in exceptional cases. *Meisel,* 97 Wn.2d at 411; *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.,* 85 Wn. App. 695, 707–08, 934 P.2d 715 (1997). "The doctrine of disregard of the corporate entity will not apply, even though the intent necessary to disregard the corporate entity may exist, unless it is necessary and required to prevent unjustified loss to the injured party." *Morgan,* 93 Wn.2d at 587, 611 P.2d 751 (emphasis added). This language imposes a proximate cause prong to the test for corporate disregard. The test set forth in *Morgan* and *Meisel* "can be applied in any situation in which the corporate form has been abused." *Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc.,* 61 Wn. App. 395, 399 n. 1, 811 P.2d 221 (1991).

GMAC cannot present evidence to demonstrate that such "exceptional" circumstances exist in this case. When a corporation becomes insolvent through market forces or other business setbacks, creditors are not permitted to seek relief against the individual shareholder instead of the corporation. Because the corporate form was respected, this claim must be dismissed.

Ind. Defs' Mot for SJ - 14
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1.    There is No Evidence that Hiatt Pontiac Failed to Respect the Corporate Form.

A corporation exists as an organization distinct from the personality of its shareholders. *State v. Northwest Magnesite Co.*, 28 Wash. 2d 1, 182 P.2d 643 (1947). When the shareholders of a corporation, who are also the corporation's officers and directors, conscientiously keep the affairs of the corporation separate from their personal affairs, and no fraud or manifest injustice is perpetrated upon third persons who deal with the corporation, the corporation's separate entity should be respected. *Frigidaire Sales Corp. v. Union Properties, Inc.*, 88 Wn.2d 400, 562 P.2d 244 (1977). The concentration of ownership in the hands of one or two principal shareholders does not dispel the corporate characteristics of the organization. *Northwest Magnesite*, 28 Wn.2d at 41.

GMAC alleges that Hiatt Pontiac shareholders, directors, and officers failed to maintain the corporate formalities.[66] To pierce the corporate veil on this basis, GMAC is required to show that it was somehow misled with regard to the existence of Hiatt Pontiac. *See Truckweld*, 26 Wash. App. at 644–46. For example, in *Truckweld*, the court found that the alleged corporate informalities had no causal relationship whatsoever to the loss suffered by the plaintiffs. *Id.* at 646 ("we cannot see how Truckweld's position would be different had Aztec meticulously documented its corporate actions.") (citing *Frigidaire Sales*, 88 Wn.2d 400; *Block v. Olympic Health Spa, Inc.*, 24 Wn. App. 938, 604 P.2d 1317 (1979); *Soderberg Adver.*, 11 Wn. App. 721; *Sirmons v. Arnold Lumber Co.*, 167 So.2d 588 (Fla. App. 1964)). *See also Plumbers & Fitters, Local 761 v. Matt J. Zaich*

---

[66] Dkt. 1 Ex. A at 8 (¶ 8).

Ind. Defs' Mot for SJ - 15
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

*Constr. Co.*, 418 F.2d 1054, 1058 (9th Cir. 1969) ("the disregarding of the corporate form of business should not rest on the manner of doing business in general but should rest on the effect that the manner of doing business has on the particular transaction involved . . .. Generally speaking, the doctrine is designed to prevent a person from doing injury and then escaping responsibility by hiding behind a corporate shield."). In *Uni-Com Northwest, Ltd. V. Argus Pub. Co.*, 47 Wn. App. 787, 737 P.2d 304 (1987), the court dismissed plaintiff's claim for corporate disregard where there was no demonstrated link between plaintiff's alleged harm and the way the corporation conducted itself. Critically, GMAC cannot identify how some informality or failure to follow the corporate bylaws caused harm to GMAC. *Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc.*, 29 Wn. App. 311, 315, 627 P.2d 1352, 1354 (1981) ("Nor will informality in the operation of a closely held corporation lead to a disregard of the corporate entity if the informality neither prejudices nor misleads the plaintiff."). There are no allegations that GMAC was ever led to believe that Hiatt Pontiac was acting other than in its "corporate" capacity.

GMAC had been conducting business with Hiatt Pontiac as a corporation since Hiatt Pontiac's inception in 1985.[67] Thus, GMAC cannot allege that it was led to believe that they were led to believe that it was contracting with any of the Hiatt Individuals rather than Hiatt Pontiac. This is further exemplified by GMAC's repeated requests in 2008 that Stephen A. Hiatt provide his personal guarantee, which he refused to do.[68] Essentially, GMAC is attempting to obtain the personal guarantee that Stephen A. Hiatt refused to provide through this lawsuit.

---

[67] SLB Dec. Ex. 1.

[68] Hiatt Dec. at ¶¶ 21-24 and SLB Dec. Ex. 9. [HI00086-098, 0295-0297,]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.    There is No Evidence that GMAC was Deceived by Hiatt Pontiac Borrowing Money from Hiatt.

There is no evidence to suggest that the Hiatt Individuals, shareholders, directors, or officers of Hiatt Pontiac did not keep their own affairs separate from those of the corporation, yet GMAC suggests two loans made by Stephen A. Hiatt to Hiatt Pontiac were somehow in disregard of the corporate form.  The fact that Hiatt loaned money to Hiatt Pontiac on two occasions is not evidence of intertwining sufficient to pierce the corporate veil.[69]  On June 1, 2005, Hiatt Pontiac's Board of Directors "deem[ed] it desirable and in the best interests of the corporation to borrow $500,000 from Stephen A. Hiatt and Carol M. Hiatt (the "Loan") via a promissory note."[70]  Hiatt made a secured loan under a promissory note, not simply an infusion of capital such that the monies could not be separately identified or accounted for.

In addition, due to concerns about cash flow, in early May 2008. Stephen A. Hiatt made a $100,000 short term loan to Hiatt Pontiac.  Stephen A. Hiatt was going to be out of town on vacation, and wanted to ensure that Hiatt Pontiac had sufficient cash flow during his absence.  The loan was properly noted as a payable owed to Hiatt through his "220 account" and was repaid on August 11, 2008.[71]  There was proper consideration for the re-payment in August 2008, which was to satisfy an obligation of Hiatt Pontiac.

The fact that an individual shareholder loaned Hiatt Pontiac money and kept track of the amounts for future repayment is not evidence to justify piercing the corporate veil.  It is clear that independent books were maintained, check registers maintained and

---

[69] SLB Dec. Ex. 5 at 04115-4124.
[70] *Id.*
[71] Hiatt Dec. at ¶ 8.

Ind. Defs' Mot for SJ - 17
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

separate tax returns were filed.  As *Critzer* explains, a loan to the corporation by a shareholder is not a basis to pierce the corporate veil.  "It is immaterial whether the sums which it borrowed to commence its business were, in fact, borrowed from stockholders rather than some lending institution or other person.  In either event, appellant would not have been deceived ...."  *Critzer*, 52 Wn.2d at 451.  GMAC, like Critzer, cannot present any evidence that these loan transactions caused it to be deceived.

### 3. There is No Evidence that Paying Hiatt Pontiac's Creditors and Legitimate Business Expenses Was Fraudulent.

GMAC essentially claims that Hiatt had a fiduciary duty to GMAC because Hiatt Pontiac became insolvent and GMAC was one of Hiatt Pontiac's creditors.  GMAC alleges that on August 28, 2008, Hiatt Pontiac had $231,031.97 in its general operating account that should have been used to repay GMAC.[72]  It further alleges that Hiatt Pontiac, instead of paying those monies to GMAC, fraudulently paid two of the Hiatt Individuals and other creditors.

The winding down of Hiatt Pontiac and the paying of creditors was not done in a manner to defraud GMAC.  Hiatt Pontiac funds were not stolen and documentation provided to GMAC shows the use of those funds for corporate obligations such as paying key employees to stay on, paying employees for the work previously performed, paying insurance, and other creditors to reduce its liabilities.  Hiatt Pontiac explained:

> On August 28, 2008, Hiatt Pontiac identified what critical support the corporation needed to satisfy GMAC's demands for documents, information, files and the like.  Additionally accounting, government tax reporting, 401k accounting, and a multitude of functions had to be performed in order to keep open and or wind down the corporation. Substantial work was required to close out open accounts, manage

---

[72] Dkt. 1, Ex. A at 16-21 (¶¶ 47–58, 64–73).

Ind. Defs' Mot for SJ - 18
(C08-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

parts and tool returns, vendor returns, and equipment returns. There were also security needs for an unmanned facility. In this case it was in the best interest of Hiatt Pontiac to retain certain key employees' assistance for a limited period of time. It would not have been reasonable to expect these employees to work unpaid and the following payments were made on August 28, 2008, to secure the services of those employees:

Stephen A. Hiatt, Sr.       $35,064.58
Steven M. Hiatt, Jr.        $30,000.00
Missy Branham, Controller   $21,000.00.[73]

Hiatt Pontiac also explained that other outstanding debts were paid including, department of licensing fees, lease obligations (real estate taxes and rent), CPA fees, insurance, payroll, payroll taxes, Chevron fuel, corporate Amex bills and the like.[74]

The funds in Hiatt Pontiac's operating account were used to pay off Hiatt Pontiac's debts and obligations. This is exactly what is required for good corporate governance and responsibility. Unfortunately, there were not sufficient funds to pay all of Hiatt Pontiac's known debts and obligations. The record is undisputed that the debts and obligations paid were legitimate business expenses of Hiatt Pontiac. The money was not spent on new cars for shareholders, fancy vacations, or for any other improper purpose. It was not disbursed to drain Hiatt Pontiac of funds. Hiatt Pontiac paid taxes, wages, rent, insurance, and other valid debts of the corporation.[75]

GMAC's allegation that payment of monies to the Hiatt Individuals was somehow fraudulent is without support.[76] Washington courts have clearly stated that "the mere fact that a corporate officer may have received an improper preference does not mean

---

[73] SLB Dec. Ex. 8 (Hiatt Pontiac GMC Truck, Inc.'s Responses to Interrogatories) at No. 6.

[74] SLB Dec. Ex. 8 at No. 7; Hiatt Dec. at ¶ 34.

[75] *Id.*; SLB Dec. Ex. 8 at No. 7.

[76] Dkt. 1, Ex. A at 16-21 (¶¶ 47–58, 64–73).

Ind. Defs' Mot for SJ - 19
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

that the corporate entity must be disregarded so as to render him liable directly to all corporate creditors. We know of no decision which so holds." *Block*, 24 Wn. App. at 950. Moreover, under Delaware law, where Hiatt Pontiac is incorporated, the Supreme Court held that even if the corporation is insolvent, its creditors cannot bring a direct action against the corporation's officers for breach of fiduciary duty. *North American Catholic Educ. Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 100–01 (Del. 2007).

There is no evidence to support GMAC's allegations that the Hiatt Individuals used the corporate form to defraud GMAC or to evade a duty, dismissal is appropriate. *Washington Water Jet v. Yarbrough*, 151 Wn. 2d 470, 503, 90 P.3d 42 (2004). There was no "fraud" upon the Plaintiff when Hiatt Pontiac used its operating account to pay its various creditors. GMAC's claims against the Hiatt Individuals should be dismissed.

GMAC must provide evidence that each of the Hiatt Individuals disregarded the corporate form with the "intent" to avoid a duty to GMAC. Steven M. Hiatt and Thea Hiatt are not shareholders, are not officers and had no involvement in making decision relative to payment of Hiatt Pontiac's creditors.[77]    They have failed to do so thus the claims against the Hiatt Individuals should be dismissed. *Id.* at 503 (affirming summary judgment dismissal of claims against individual shareholders where plaintiff failed to provide evidence that the corporate form was abused). It is not an "abuse of the corporate form" to pay a corporation's creditors with funds in its operating account.

4.    **Plaintiff Cannot Show that Hiatt Pontiac is the Alter Ego of Stephen A. Hiatt.**

Under Washington law, courts are reluctant to pierce the corporate veil, especially under the alter ego theory. The alter ego theory is only applied when "the corporate entity

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Burns*, 13 Wn. App. at 418 (internal citations omitted). Stated another way, "Where a private person so dominates and controls a corporation that such corporation is his *alter ego,* a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same." *Standard Fire Ins. Co. v. Blakeslee,* 54 Wn. App. 1, 5, 771 P.2d 1172 (1989) (quoting *Pohlman Inv. Co. v. Virginia City Gold Mining Co.,* 184 Wash. 273, 283, 51 P.2d 363 (1935)).

GMAC contends that Hiatt should be liable as Hiatt Pontiac's "alter ego," such that Hiatt's actions as the corporation's officer are imputed to Hiatt Pontiac. *Standard Fire,* 54 Wn. App. at 5. However, a "corporation is considered an entity separate and distinct from its officers or stockholders even where they are only one in number." *Truckweld,* 26 Wn. App. at 644. As previously discussed, there is no evidence to suggest that Hiatt Pontiac was the alter ego of Stephen A. Hiatt, Sr. "[A] corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person." *Grayson,* 92 Wn.2d at 553 (citing *Nursing Home Bldg. Corp. v. DeHart,* 13 Wn. App. 489, 535 P.2d 137 (1975)).

5.    Plaintiff is Not Entitled to a Solvent Defendant and Cannot Create One by Asserting the Doctrine of Piercing the Corporate Veil.

Essentially, GMAC wants to hold the shareholders, directors, and officers of a now defunct business personally liable because the business has no assets to completely satisfy its claims if it should prevail. "Plaintiff is not entitled to a solvent defendant and

---

[77] Hiatt Dec. at ¶ 36.

Ind. Defs' Mot for SJ - 21
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

cannot be allowed to create one by asserting disregard of the corporate entity when the activities, which admittedly otherwise might justify disregard, have had no effect on the plaintiff's ability to collect a judgment from the defendant corporation at the time the doctrine is asserted." *Morgan,* 93 Wn.2d at 589.

GMAC has already pursued remedies available to it to recover on its claims, and seized assets belonging to Hiatt Pontiac. On August 28, 2008, GMAC obtained a TRO. GMAC has already recaptured the Hiatt Pontiac assets for which it had a valid security interest, and recovered approximately 70% of the $11 million it initially claimed Hiatt Pontiac owed.[78] GMAC did not pursue remedies, such as involuntary bankruptcy or receivership actions to seize Hiatt Pontiac assets. GMAC knew it had no basis to reach the personal assets of Stephen A. Hiatt. GMAC repeatedly tried to obtain Hiatt's personal guarantee and failed, illustrating full well GMAC's knowledge of the corporate protections that exist.[79] There is no basis for GMAC to enforce some personal liability upon Steven M. Hiatt, who was paid for services that he performed on behalf of Hiatt Pontiac during fall 2008, or upon Thea Hiatt and Carol M. Hiatt who received nothing from Hiatt Pontiac.

**B.    Stephen A. Hiatt Had A Fiduciary Duty to Hiatt Pontiac, Not GMAC, and There Is No Evidence to Support the Alleged Breach of Fiduciary Duty.**

GMAC essentially argues that Hiatt Pontiac preferred other creditors, including secured debt owed to Hiatt over GMAC. However, "the mere fact that a corporate officer may have received an improper preference does not mean that the corporate entity must be disregarded so as to render him liable directly to all corporate creditors. We know of

---

[78] Hiatt Dec. at ¶ 37. GMAC originally claimed Hiatt Pontiac owed $11 million; that amount has now been reduced to approximately $4 million.

[79] Hiatt Dec. at ¶¶ 6-7, 10-11, 21-24, 29; SLB Dec. Ex. 7.

Ind. Defs' Mot for SJ - 22
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

no decision which so holds." *Block v. Olympic Health Spa, Inc.*, 24 Wn. App. 938, 604 P.2d 1317 (1979). No Washington case holds that a corporation owes a fiduciary duty to its creditors. A recent Delaware case expressly addressing this issue holds to the contrary: even if a corporation is insolvent, its creditors cannot bring a direct action against the corporation's officer for breach of fiduciary duty. *North Amer. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A. 2d 92, 100 (Del. 2007) (creditors of insolvent corporation could not bring direct breach of fiduciary duty actions against such corporations' directors).

C.    **Stephen A. Hiatt's Actions With Respect to Hiatt Pontiac's Contracts with GMAC Were All In His Capacity as President of Hiatt Pontiac and Were Privileged.**

Washington courts allow a corporate officer to be liable for tortious interference with the corporation's contracts only if the officer acts in bad faith and to pursue purely personal goals without any benefit to the corporation. *Olympic Fish Products, Inc. v. Lloyd,* 93 Wn.2d 596, 599-600, 611 P.2d 737 (1980). "Recovery for tortious interference with a contractual relation requires that the interferor be an intermeddling third party; a party to a contract cannot be held liable in tort for interference with that contract." *Houser v. City of Redmond,* 91 Wn.2d 36, 39, 586 P.2d 482 (1978) (*en banc*) (citations omitted). Instead, recovery for such interference would be through a breach of contract action. *Id.* Employees of a party are third parties only if they were acting outside the scope of their employment. *Id.* at 40. In this context good faith means "nothing more than an intent to benefit the corporation." *Olympic Fish Products,* 93 Wn.2d at 599. "The good faith test merely prevents corporate officers from pursuing purely personal goals with no intent to benefit the corporation." *Id.* at 600.

Ind. Defs' Mot for SJ - 23
(C08-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

D.    **The Evidence Does Not Support Any Fraudulent Transfers to the Hiatt Individuals.**

Essentially, GMAC argues that the Hiatt Pontiac made preferential transfers to insiders on August 28, 2008, totaling approximately $150,000. Based on this, GMAC seeks to set aside those transfers and retrieve the funds. *Block v. Olympic Health Spa, Inc.*, 24 Wn. App. 938, 604 P.2d 1317 (1979), holds that any recovery for a fraudulent transfer is limited to the amount of the transfer and does not create a basis to hold the recipient liable on the corporation's full underlying debt. As explained in detail above, the payments on August 28, 2008, to Stephen A. Hiatt and Steven M. Hiatt were for additional services to permit the business to continue to serve customers and to either attempt to sell the business as a going concern, or wind down the business.

E.    **Stephen A. Hiatt Alone Made Decisions as to Payment and There is No Evidence of Any Conspiracy Among the Defendants.**

A conspiracy requires an agreement between two or more persons to accomplish the object of the conspiracy, which must also involve either an unlawful purpose or use of unlawful means to accomplish a purpose. *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 528-29, 424 P.2d 290 (1967). A "conspiracy" must be proved by clear, cogent and convincing evidence. *Id.* There was no such agreement. Stephen A. Hiatt alone determined what payments were made by Hiatt Pontiac in August 2008.[80] Carol and Thea Hiatt had no role in any Hiatt Pontiac activities. Stephen A. Hiatt alone instructed employees on what steps were to be taken with respect to the banking and payments of Hiatt Pontiac, and was the only one with authority to do so. There was no "agreement" between Stephen A. Hiatt and Steven M. Hiatt, an employee or contractor who performed work at Stephen A.

---

[80] Hiatt Dec. at ¶ 36.

Ind. Defs' Mot for SJ - 24
(CO8-5707 RJB)
[1444351 v12.doc]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Hiatt's instruction.  There was no "conspiracy" between Hiatt Pontiac and Stephen A. Hiatt, because its agents, acting on behalf of the corporation, are not separate persons.

III.     CONCLUSION

There is no evidence to assert a breach of fiduciary duty claim or intentional interference with contract claim against Steven M. Hiatt, Carol M. Hiatt or Thea Hiatt. There is no evidence of any conspiracy whatsoever, much less the clear, cogent and convincing evidence required by law.  Finally, the claims to disregard the corporate entity and hold Stephen A. Hiatt liable as the alter ego of Hiatt Pontiac corporation are without merit.  GMAC knew it did not have a personal guarantee from Stephen A. Hiatt, and cannot disregard the existence of the corporation that it dealt with for over 23 years. Stephen A. Hiatt's actions were on behalf of the corporation and in good faith and the payments made were not fraudulent transfers.  The claims against the individual defendants should be dismissed.

Dated this _20th_ day of October, 2009.

GORDON THOMAS HONEYWELL LLP

By _Stephanie Bloomfield_

Stephanie Bloomfield, WSBA No. 24251
sbloomfield@gth-law.com
Attorneys for Defendants

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565